NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-829

COMMONWEALTH

vs.

JOHN A. FONTES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, John Fontes, was convicted of operating under the influence of liquor. On appeal he claims that (1) the judge abused his discretion in allowing the Commonwealth's peremptory challenge of a person of color, and (2) the evidence at trial was insufficient to prove impairment. We affirm.

Background. We summarize the facts the jury could have found, in the light most favorable to the Commonwealth, reserving certain details for our analysis of the issues raised on appeal. On November 4, 2021, Sergeant William Patterson of the East Bridgewater Police Department was "on patrol" on Central Street in East Bridgewater. At approximately 9:21 P.M., while stopped at the intersection of Central and Washington Streets, he saw a "white Ram pickup truck coming south that was

taking a right."  The truck "turned right onto Central Street and it crossed into the opposite lane of travel, and then it corrected and crossed back in" to the correct lane of travel. Having seen the truck cross over double yellow lines and drive in the wrong lane, Sergeant Patterson activated his blue lights and "pull[ed] the vehicle over."  Sergeant Patterson spoke with the operator of the truck, the defendant.  Sergeant Patterson smelled a moderate odor of alcohol emanating from the defendant, and noticed that the defendant's eyes were red and glassy.  The defendant first denied drinking any alcohol, then said that "he had a beer, and then he stated he had two beers."

At Sergeant Patterson's request, the defendant exited the truck to perform field sobriety tests.  As the defendant moved to the rear of the truck, he "staggered," was "unsteady on his feet," and walked "in a serpentine manner."  Sergeant Patterson asked the defendant to produce his driver's license, and, in response, the defendant handed him a debit card.  Sergeant Patterson then "swapped back" the debit card and took the defendant's license.  After watching the defendant perform the nine-step walk and turn test and the one-legged stand test, Sergeant Patterson formed the opinion that the defendant was intoxicated, placed him under arrest, and transported him to the

2

police station.[1]  The ride from the place of arrest to the police station was three to four minutes.  As the police cruiser arrived at the police station, the defendant "was nodding off."

The defendant testified at trial.  He stated that he was "emotional" on the date of the incident because his grandmother had passed away, and he and his girlfriend were on "bad terms." He also testified that he is "not a drinker" and consumed one beer that day around 6:30 P.M.  He acknowledged that he may have "swerved" while driving and "did go partially into the other lane" of travel, but denied driving on the wrong side of the road.[2]  He disputed Sergeant Patterson's version of his performance on the field sobriety tests, denied falling asleep on the ride to the police station, denied feeling the effects of the one beer he had consumed earlier, and stated that the alcohol did not affect his ability to drive.[3]

---

[1] A video depicting the defendant throughout the postarrest booking process was played for the jury.

[2] The defendant testified that he swerved because he "was trying to hook [his] phone to the phone holder."

[3] On November 10, 2023, the judge allowed the defendant's assented-to motion under Mass. R. A. P. 8 (e), as appearing in 481 Mass. 1611 (2019), approving a stipulation as to the contents of various sidebar discussions from trial that were inaudible or partially audible on the trial recordings. Additional facts gleaned from the stipulation are incorporated into the discussion and analysis herein.  We acknowledge the efforts of counsel in this regard.

Discussion. 1. Peremptory challenge. Article 12 of the Massachusetts Declaration of Rights prohibits the exercise of peremptory challenges "to exclude members of discrete groups solely on the basis of bias presumed to derive from that individual's membership in the group." Commonwealth v. Oberle, 476 Mass. 539, 544 (2017), quoting Commonwealth v. Rodriguez, 431 Mass. 804, 807 (2000). "Peremptory challenges are presumed to be proper, but that presumption may be rebutted on a showing that (1) there is a pattern of excluding members of a discrete grouping and (2) it is likely that individuals are being excluded solely on the basis of their membership in that group." Oberle, supra at 545. "Once . . . a pattern is found, the burden shifts to the party exercising the challenge to provide a 'group-neutral' explanation for it." Id., quoting Commonwealth v. Maldonado, 439 Mass. 460, 463 (2003). "The judge must then determine whether the explanation is both 'adequate' and 'genuine.'" Oberle, supra, quoting Maldonado, supra at 464-465. "[T]he critical point of focus for the trial judge as well as the appellate court turns to the adequacy and genuineness of the explanation proffered by the party seeking to exercise the peremptory challenge." Oberle, supra at 546. See generally Mass. G. Evid. § 1116 (2024).

In the present case, during jury empanelment the Commonwealth exercised two peremptory challenges to which the

defendant did not object.[4]  The empanelment process continued, during which additional jurors were excused for cause and two other jurors were excused on peremptory challenges by the defendant.  After the judge noted on the record that the defense had exhausted its peremptory challenges, jury empanelment continued, and the judge conducted voir dire of other prospective jurors.

After the final juror had been seated, as empanelment concluded, the defendant objected to the Commonwealth's earlier peremptory challenge of juror 22, claiming that the juror was a person of color and the only person of color in the jury venire. The judge noted that the defense should have raised this objection earlier.  The judge also noted that he thought that juror 22 was "Haitian."  The judge then asked the Commonwealth to explain the reason for challenging the juror.  The Commonwealth responded that "she was concerned about the juror's response to the judge's question about whether or not he could understand English and that, although his response was affirmative, the Commonwealth was concerned about the juror's demeanor or tone of voice, i.e., that it appeared ambivalent."

_____

[4] The defendant acknowledges in his brief that there was no initial objection to the Commonwealth's peremptory challenge.

5

The judge found that the Commonwealth's explanation was both adequate and genuine.

The following day of trial, the judge noted for the record that the defendant's challenge of juror 22 was not timely because defense counsel "waited till we replaced that juror and three others. You need to make those challenges before they exercise it so the Judge can put the brakes on it. So you didn't do that till the end . . . . Once we've replaced the juror and in fact, three others, it's too late." The judge noted the defendant's objection and reiterated that he had credited the Commonwealth's race-neutral explanation for the challenge.

The defendant contends that the challenge to juror 22 was timely because (1) it was "made before the jurors [were] sworn," see Mass. R. Crim. P. 20 (c) (2), 378 Mass. 891 (1979), and (2) it comported with the judge's instructions on jury empanelment wherein he stated, "[i]f you should object to any of the jurors, you will do so after their names are called and before they are sworn." We disagree.

As noted in the defendant's brief, "[t]o preserve the issue of an improper peremptory challenge for appellate review, the objection to the peremptory challenge must be made as soon as the basis for the objection is apparent." Mass. G. Evid. § 1116 note. Here, there is no material dispute that the basis for the

6

objection -- juror 22's status as a person of color -- was apparent to the defendant at the time that the Commonwealth exercised the peremptory challenge.  That notwithstanding, the defendant did not object.  Indeed, no objection was made until the judge had informed the defendant that he had exhausted his peremptory challenges and jury selection had, in essence, concluded.  In these circumstances, the objection was not timely.  Accordingly, our review is limited to whether there was error, and if so, whether the error created a substantial risk of a miscarriage of justice.[5]  See Commonwealth v. Lacoy, 90 Mass. App. Ct. 427, 435 (2016).

The defendant contends that even assuming the objection was untimely, the challenge of juror 22 constituted error that created a substantial risk of a miscarriage of justice because the race-neutral reasons proffered by the Commonwealth were not adequate.[6]  Again, we disagree.[7]

---

[5] We note that the defendant did not ask the judge for additional peremptory challenges.  See Commonwealth v. Berardi, 88 Mass. App. Ct. 466, 473 (2015).

[6] The defendant does not challenge the judge's finding that the peremptory challenge was "genuine."

[7] Even assuming, arguendo, that the defendant's objection to the peremptory challenge of juror 22 was timely, the outcome would not change, as we discern no abuse of discretion in the judge's determination that the basis for the challenge was adequate.

"An explanation is adequate if it is clear and reasonably specific, personal to the juror and not based on the juror's group affiliation (in this case race) . . . and related to the particular case being tried" (citations and quotations omitted). Maldonado, 439 Mass. at 464-465. Here, we cannot say that the judge erred in determining that the prosecutor's race-neutral reason for the challenge was adequate. Contrary to the defendant's claim, this was not a case where the record shows that the peremptory challenge was based solely on the juror's demeanor. Rather, the record reflects concerns regarding juror 22's ability to understand English and related communication issues, as reflected by the judge's questions to that juror during empanelment. We are mindful that "the judge was in a position to evaluate both the prosecutor and the juror's demeanor" (citation omitted), Commonwealth v. Rosa-Roman, 485 Mass. 617, 638 (2020), and "[r]estraint, in the review of fact finding, is fundamental to an appellate judge's role." Commonwealth v. Kalila, 103 Mass. App. Ct. 582, 590 (2023). "We grant deference to a judge's ruling on whether a permissible ground for the peremptory challenge has been shown and will not disturb it so long as it is supported by the record" (citation and quotation omitted). Commonwealth v. Prunty, 462 Mass. 295, 304 (2012).

2.  Sufficiency of the evidence of impairment.  The defendant's argument regarding the lack of evidence of impairment is likewise unavailing.  In view of the evidence adduced at trial, viewed in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), the judge properly denied the motions for a required finding of not guilty and the defendant's postconviction motion pursuant to Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995).  This evidence included, but was not limited to, the odor of alcohol from the defendant, his admission to consuming alcoholic beverages, his red and glassy eyes, his unsteadiness, and his performance on field sobriety tests.  See generally Commonwealth v. Jewett, 471 Mass. 624, 636 (2015);

Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 392-393 (2017).

Judgment affirmed.

Order dated January 20, 2023, denying postconviction motion affirmed.

By the Court (Blake, Neyman & Sacks, JJ.[8]),

*Paul Little*

Clerk

Entered: August 29, 2024.

---

[8] The panelists are listed in order of seniority.

10